# United States Tax Court

T.C. Memo. 2023-27

COMMONWEALTH UNDERWRITING &
ANNUITY SERVICES, INC.,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 8228-18X.                    Filed March 2, 2023.

————

*Kenneth Rubinstein*, for petitioner.

*Rosemary Y. Oluwo*, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CARLUZZO, *Chief Special Trial Judge*: Respondent determined that petitioner does not qualify for exemption from federal tax under section 501(a)[1] because, contrary to petitioner's claim, it is not an organization described in section 501(c)(15). Petitioner challenges that determination in this declaratory judgment proceeding. *See* § 7428(a).[2] The disposition of an action for declaratory judgment involving the initial qualification or classification of an exempt organization will

————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Section 7428(a)(1)(E) provides the Court with jurisdiction to make a declaration in a case of actual controversy involving a determination by the Secretary with respect to the initial qualification or continuing qualification of an organization as an organization described in section 501(c)(15) which is exempt from tax under section 501(a).

**[\*2]** ordinarily be made on the basis of the administrative record. Rule 217(a). The case has been submitted without trial; the administrative record, admitted into evidence by stipulation, is the only evidence offered by the parties and is the source of the factual summary that follows. *See* Rules 122, 217(b)(1) and (2). Petitioner's principal place of business was in Belize City, Belize, when the Petition was filed.

Petitioner bears the burden of proving that respondent's determination is incorrect. *See* Rule 142(a); *Partners in Charity, Inc. v. Commissioner*, 141 T.C. 151, 162 (2013); *Calhoun Acad. v. Commissioner*, 94 T.C. 284, 295 (1990). For the following reasons, we find that petitioner has failed to do so.

FINDINGS OF FACT

On January 17, 2013, petitioner was organized by a "Memorandum of Association and Articles of Association" (memorandum of association) in Belize, which shows petitioner's sole shareholder to be its only flesh and blood officer. Nothing in the record suggests that petitioner adopted bylaws.

According to the memorandum of association, petitioner was organized to engage in any act or activity that is not prohibited under any law then in force in Belize, including, but not limited to carrying "on the business of an investment company." The general business objectives listed in petitioner's memorandum of association do not include the marketing, issuance, or maintenance of commercial annuity contracts.

During the relevant time, petitioner sold annuity contracts to individuals in consideration for purchase payments. The parties dispute the characterization of the purchase payments for federal income tax purposes. Upon receipt, purchase payments were transferred to a segregated trust account administered by an independent trustee neither related nor subordinate to petitioner. The segregated trust account was further divided among various subaccounts invested in separate investment funds. The trustee of the segregated trust account was responsible for the annuity contracts' assets, investments, and distributions of funds as necessary pursuant to the terms of the annuity contracts. According to the annuity contracts, the assets held in the segregated trust accounts and subaccounts are the "property" of petitioner rather than of the clients that provided the purchase payments.

**[*3]** The annuity contracts provide that "prior to [the] annuitization [date] the Primary Beneficiary may select" an annuity payment option "available under the contract," including a life annuity, a joint and survivor annuity, or "an Annuity Payment Option not set forth in the Contract, but which is acceptable to" petitioner. Further, the annuity contracts specify that petitioner will "make payments under an annuity option [no] less frequently than annually." The annuity contracts also provide for an initial variable account charge payment to petitioner from the purchase payments "designed to compensate . . . [petitioner] for assuming the mortality risks and expense risks under this Contract and to reimburse . . . [petitioner] for expenses incurred in the issuance of the Contract," as well as an annual maintenance charge payment to petitioner deducted from the variable account "designed to compensate . . . [petitioner] for assuming ongoing mortality risks and expense risks under this Contract and to reimburse . . . [petitioner] for expenses incurred in the annual administration of the Contract." Pursuant to the annuity contracts, each investment fund is assessed investment management fees by the fund's investment adviser "for managing the Fund and selecting its portfolio of securities."

Pursuant to the annuity contracts, the value of each segregated trust account depends on the performance of the investment options chosen. The amount of each annuity payment, likewise, depends on the performance of the investment options chosen and is not guaranteed for that reason.

The annuity contracts provide a death benefit provision which states that "the Death Benefit that will be paid under this Contract to the Beneficiary upon the death of the Annuitant will be the total of all Purchase Payments received by . . . [petitioner] prior to the date of the Annuitant's death, less all annuity payments and other payments previously made by . . . [petitioner] and less any applicable [contingent deferred sales charge]."

Petitioner received $82,621,231 and $2,131,442 in purchase payments in 2013 and 2014, respectively, as consideration for the sale of the annuity contracts. According to respondent, the purchase payments constitute premiums; according to petitioner, the purchase payments "arguably" are premiums, but not premium income.[3]

---

[3] The distinction has not been explained. *See* § 832(b).

[*4] Petitioner also received $150,000[4] and $194,782 in maintenance fees in 2013 and 2014, respectively. According to petitioner, and without explaining why or how, only the maintenance fees constitute premiums.

On May 12, 2014, petitioner submitted to the IRS a Form 1024, Application for Recognition of Exemption Under Section 501(a) of the Internal Revenue Code. The narrative description of petitioner's activities included with the Form 1024 states in part that petitioner

> markets and issues commercial annuity contracts to individuals worldwide and it administers and maintains such contracts. This constitutes 100% of the Company's activities. The activities are carried out by the officers and personnel of the Company. The Company does not engage in marketing, sales or solicitation of such contracts in the United States. The annuity contracts issued by the Company do not contain any life insurance component, nor do they provide any death benefit, other than the return of any unpaid principal remaining under the contract. The total gross income of the Company will not exceed US $600,000 per annum. All income will be derived from annuity contract maintenance fees.

Respondent issued petitioner a final adverse determination letter dated January 24, 2018, denying petitioner's application. The determination letter stated in pertinent part:

> This is a final adverse determination that you do not qualify for exemption from Federal income tax under Internal Revenue Code (the "Code") section 501(a) as an organization described in Code Section 501(c)(15). The adverse determination was made for the following reason(s): Applicant does not qualify for exemption under section 501(c)(15) because Applicant has not established that it is an insurance company described in section 816 (other than life) within the meaning of section 501(c)(15), and it does not meet the requirements of section 501(c)(15) that its gross receipts not exceed $600,000 and that more

---

[4] There is some confusion whether the proper figure for 2013 is $150,000 or $154,392, but this does not affect our conclusion here.

[*5] than 50 percent of its receipts consist of premiums. Therefore, your application for exemption is denied.

## OPINION

An organization that is described in section 501(c)(15) can qualify for exemption from federal income tax under section 501(a) if the organization: (1) is an insurance company as defined in section 816(a) (other than a life insurance company)[5] and (2) the organization's gross receipts for the taxable year do not exceed $600,000 and more than 50% of its receipts consist of premiums (financial test). *See* § 501(c)(15)(A)(i).

Assuming without finding that petitioner is an insurance company as defined in section 816(a), we address whether petitioner satisfies the financial test in section 501(c)(15)(A)(i).[6]

According to respondent, the purchase payments of $82,621,231 and $2,131,442 petitioner received in 2013 and 2014, respectively, constitute "gross receipts" for purposes of section 501(c)(15)(A), and because petitioner's gross receipts for each of those years exceed $600,000, petitioner fails the financial test in section 501(c)(15)(A)(i)(I) and is not exempt from tax under section 501(a).

Petitioner, on the other hand, contends that the purchase payments it received did not constitute gross income within the meaning of section 501(c)(15)(A). Specifically, petitioner argues that (1) because the purchase payments were not "retained, controlled or utilized by" petitioner, they do not constitute gross receipts, and (2) the purchase payments "do not comprise premium income," even if they may be considered premiums. Petitioner further contends that its only source of gross receipts during the years in issue was annual maintenance charges, which did not exceed $600,000 during any year in issue, and

---

[5] Section 816(a) defines an insurance company as any company "more than half of the business of which during the taxable year is the issuing of insurance or annuity contracts."

[6] Relying upon a statement made by respondent's Appeals officer that the financial test was "not in issue," petitioner takes the position that the financial test should not be taken into account here because the test was not challenged by respondent during the consideration of its application for exemption. The express text of the final adverse determination letter demonstrates otherwise. Furthermore, petitioner does not, and could not, argue that it was precluded or dissuaded from offering evidence that it complied with the financial tests during administrative consideration. The evidence was offered and, as noted, apparently taken into account in the final adverse determination letter.

[*6] therefore it satisfies the financial test in section 501(c)(15)(A) and is a qualifying organization exempt from tax under section 501(a).

Insurance premiums are includable in an insurance company's gross income. *See Avrahami v. Commissioner*, 149 T.C. 144, 174–75 (2017). Petitioner acknowledges that the purchase payments "constituted the funds used to make annuity payments." This appears to fit squarely within the definition of a premium. *See* National Association of Insurance Commissioners, *Statement of Statutory Accounting No. 51—Life Contracts*, para. 5 (explaining that a premium "shall be recognized as income on the gross basis (amount charged to the policyholder) when due from policyholders"). Petitioner's contention that the purchase payments were not "retained, controlled or utilized by" petitioner is contradicted by its own annuity contracts, which provide that the assets held in the segregated trust accounts and subaccounts "remain the property of" petitioner. Moreover, petitioner has not provided any authority suggesting that the premiums were not premium income. Therefore, petitioner has not established that its gross receipts did not exceed $600,000 during either year in issue, thereby failing to satisfy the financial test in section 501(c)(15)(A).

On the other hand, if the purchase payments are not properly treated as premiums, then petitioner would seem to have no premium income because petitioner has failed to establish that the maintenance fees it received should be considered "premiums." Viewed in that manner, petitioner fails the prong of the financial test that requires more than 50% of its gross receipts to consist of premiums. *See* § 501(c)(15)(A)(i)(II).

It follows that petitioner is not an organization that is described in section 501(c)(15) and therefore is not exempt from federal tax under section 501(a).

To reflect the foregoing,

*Decision will be entered for respondent.*